# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. ) | |
| LORI L. CARVER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0392-WS-N |
| ) | |
| PHYSICIANS' PAIN SPECIALISTS OF ) | |
| ALABAMA, P.C., et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

This matter is before the Court on the motion of defendant Castle Medical, LLC ("Castle") to dismiss the third amended complaint as to Castle. (Doc. 184). The interested parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 184, 190, 194), and the motion is ripe for resolution. After careful consideration, the Court concludes the motion is due to be granted in part and denied in part.

## BACKGROUND

The Court set forth much of the relevant background in its order granting Castle's motion for judgment on the pleadings ("JOP"). (Doc. 146). The relator in this False Claims Act ("FCA") case was employed by defendant Physicians Pain Specialists of Alabama, P.C. ("Pain"). In August 2013, she filed this action against Pain and against the two doctors ("Ruan" and "Couch") who owned Pain. (Doc. 1). In August 2014, she filed a first amended complaint that added another defendant. (Doc. 8). In October 2016, the government filed its notice of non-intervention. (Doc. 24). The relator then filed a second amended complaint that

added four more defendants, including Castle. (Doc. 29). In December 2016, the government gave notice of non-intervention as to this pleading. (Doc. 30).

Of the eight defendants named in the second amended complaint, only Castle continues the fight. The three defendants added along with Castle were dismissed without prejudice on the relator's unopposed request, and the other defendants have suffered entry of default. (Docs. 93, 99-100, 122-23).

The second amended complaint alleged nine different schemes against varying sets of defendants, only one of which implicated Castle, on which the relator based three FCA causes of action. The Court granted Castle's motion for JOP because the second amended complaint failed to plead, with the particularity required by Rule 9(b) and Eleventh Circuit precedent, the actual submission of false claims to the government. (Doc. 146). Following dismissal of her claims against Castle, the relator sought leave to file a third amended complaint, which leave the Court granted over objection. (Doc. 175).

The third amended complaint, (Doc. 178), is, as to Castle, substantially similar to its predecessor. Its purposes are to plead presentment with particularity and to provide supplemental allegations regarding the allegedly fraudulent scheme. (Doc. 158 at 3, 5). The additional information in the third amended complaint to accomplish these purposes derives from Castle's responses to the relator's discovery requests. (*Id*. at 16; Doc. 168 at 7).

## DISCUSSION

As with its motion for JOP, Castle's motion to dismiss raises multiple arguments, which the Court considers in turn.

**I. Use of Publicly Disclosed Information.**

"The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed … in a Federal criminal,

civil, or administrative hearing in which the Government or its agent is a party …
unless … the person bringing the action is an original source of the information."
31 U.S.C. § 3730(e)(4)(A). Castle asserts that its discovery responses constitute
public disclosures that are substantially the same as allegations or transactions
alleged in the third amended complaint and as to which the relator is not an
original source.[1]

"[D]iscovery material disclosed 'to a party who is not under any court
imposed limitation as to its use' is a public disclosure" under the FCA.
*McElmurray v. Consolidated Government of Augusta-Richmond County*, 501 F.3d
1244, 1253 n.19 (11th Cir. 2007) (quoting *United States ex rel. Stinson, Lyons,
Gerlin & Bustamante, P.A. v. Prudential Insurance Co.*, 944 F.2d 1149, 1158 (3rd
Cir. 1991) ("*Stinson*")). Castle relies on *McElmurray* for the proposition that the
discovery responses supporting the third amended complaint "were publicly
disclosed" for purposes of Section 3730(e)(4)(A). (Doc. 184 at 6).

A "court imposed limitation" includes a protective order. *Stinson*, 944 F.2d
at 1158. "We must assume from the absence of a protective order that the
information disclosed in discovery is potentially accessible to the public." *Id*.
When, as in *Stinson*, no protective order is in place, discovery materials become
"publicly disclosed" once they are produced, whether to the relator or to another.
*Id*.[2]

---

[1] Castle has "withdraw[n]" all other challenges based on Section 3730(e)(4).
(Doc. 194 at 2).

[2] The *Stinson* Court ruled that discovery materials not subject to a protective order
are disclosed upon production even when those materials are not filed with the court. 944
F.2d at 158-59. Other appellate courts considering the issue have disagreed, generally
along the lines that "public disclosure" requires actual public access, not the mere
"potentia[l] accessib[ility]" the *Stinson* Court deemed sufficient. *United States ex rel.
Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1185-86 (10th Cir. 2008);
*United States v. Bank of Farmington*, 166 F.3d 853, 859-61 (7th Cir. 1999), *overruled in
part on other grounds*, *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907 (7th Cir.
2009); *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d 1512, 1520 (9th Cir.

The relator relies on a handful of documents drawn from Castle's discovery responses. Castle concurs that these are the only discovery responses at issue. (Doc. 184 at 5-6). All of these documents were produced pursuant to an agreed protective order, (Doc. 132), which is confirmed both by the exhibits' "confidential" stamp, (Docs. 158-4 to -8), as per the protective order, (Doc. 132 at 1), and by Castle's explicit insistence that they were so produced. (Doc. 171 at 2). That protective order forbids the parties to communicate the produced information and documents: to any person other than the parties, their counsel and staff, experts (once bound to confidentiality) and the Court; or for any purpose other than prosecuting or defending this litigation. (Doc. 132 at 3-4). Castle makes no suggestion that the relator has violated the protective order.

Castle ignores the "court imposed limitation" qualifier and therefore has failed to show that *McElmurray* has been triggered.[3] Instead, Castle suggests that the discovery responses were publicly disclosed by being "filed with the Court and described in detail in [the relator's] Complaint." (Doc. 184 at 6). The documents were filed by the relator in support of her post-JOP motions to reconsider and to amend, but they were filed under seal. Castle offers no explanation how discovery materials, subject to protective order and filed only under seal, could by such filing become "publicly disclosed" in any legally meaningful sense. Nor does Castle explain its facially implausible position that the filing of an FCA complaint relying on publicly undisclosed material itself works a public disclosure of those

---

1995), *vacated on other grounds*, 520 U.S. 939 (1997); *United States ex rel. Springfield Terminal Railway Co.*, 14 F.3d 645, 652 (D.C. Cir. 1994).

[3] Castle, (Doc. 184 at 6), quotes the text of *McElmurray* for the broad proposition that "discovery materials are public disclosures under the FCA," 501 F.3d at 1253, but it omits the Eleventh Circuit's accompanying footnote – quoted in text by the Court – that includes the "court imposed limitation" qualifier of *Stinson*, with which the *McElmurray* panel expressly "agree[d]." *Id*. n.19.

4

materials so as to compel dismissal of the action – a position that seemingly would render every FCA action ever filed subject to immediate dismissal.[4]

Because Castle has failed to show that the discovery responses on which the third amended complaint relies "were publicly disclosed" within the contemplation of Section 3730(e)(4)(A), its motion to dismiss on this ground must fail.

**II. Use of Discovery Material.**

As noted, the additional allegations of the third amended complaint are based on information in several documents produced by Castle in response to the relator's discovery requests. Castle argues that the relator "is not entitled to cure her deficient complaint using discovery produced by Castle." (Doc. 184 at 8).

The history of discovery in this action has been set forth in previous orders, (Docs. 139, 143, 175), but the Court rehearses it here (all dates are from 2017). Castle was served with process on March 20. (Doc. 40). Castle did not file a motion for JOP but instead filed an answer on April 10. (Doc. 51). The parties filed their Rule 26(f) report on June 2, in which Castle did not propose a stay of discovery or a phasing of discovery[5] but instead jointly proposed a discovery plan with no delay in commencement. (Doc. 102 at 4-6). The Magistrate Judge entered a scheduling order consistent with the report. (Doc. 106).

By conferring on June 1, (Doc. 102 at 1), the parties opened the door to discovery. Fed. R. Civ. P. 26(d)(1). On June 13, the relator properly served interrogatories, requests for production and requests for admission on Castle. (Doc. 108). As the parties requested, (Doc. 102 at 6), Castle's responses were due 30 days later, on July 13. (Doc. 106 at 5-6). Castle timely responded to the

---

[4] To the uncertain extent Castle refers to the relator's filing her proposed third amended complaint in conjunction with her motion for leave to amend – as required by Civil Local Rule 15(b) – that filing was also made under seal.

[5] Fed. R. Civ. P. 26(f)(3)(B).

5

requests for admission without objection. (Doc. 120; Doc. 194 at 8). Castle timely objected to many (though not all) of the interrogatories and requests for production,[6] but not on the grounds that discovery was premature. (Doc. 127 at 1-8; Doc. 134 at 2). Castle did not produce responses to the discovery requests as to which it had not objected, (Doc. 127 at 8), but, on July 26, counsel for Castle advised the relator's counsel that she was endeavoring to obtain such responsive information and documents from her client. (Doc. 134 at 2).

In late July, Castle decided to file a motion for JOP. (Doc. 134 at 2). On August 1, counsel so advised her counterpart. (*Id*.). On August 2, after another conversation between counsel regarding the outstanding discovery requests, the relator filed a motion to compel. (Doc. 124). Two hours later, Castle filed its motion for JOP. (Doc. 125).[7] On August 3, the relator filed an amended motion to compel, this time setting forth the specific requests and responses at issue. (Doc. 127). On August 17, as its response to the motion to compel, Castle filed a motion to stay discovery pending resolution of its motion for JOP. (Doc. 134). In this document, Castle for the first time asserted on the record that discovery should be delayed.

After full briefing, the Magistrate Judge resolved both motions. (Doc. 139). The Magistrate Judge noted Castle's argument that challenges to the facial sufficiency of a complaint usually should be resolved before discovery begins, but she further noted that Castle had filed no such challenge until after discovery had begun and until after Castle had fallen into default of its discovery obligations – obligations it had freely taken on without murmur of protest that such discovery

---

[6] Castle asserted no objections of any kind with respect to interrogatories 5, 7 and 12 and requests for production 18-20. (Doc. 127 at 1-8).

[7] Castle says it did not file its motion for JOP until August 2 because "it became apparent [that such a motion] was appropriate" only "[u]pon further legal research and review" of the second amended complaint. (Doc. 134 at 2). This late realization seems doubtful, given that Castle asserted on April 10 that the complaint failed to state a claim and insisted on June 2 that the relator "has failed to plead her claims with the particularity required." (Doc. 51 at 1; Doc. 102 at 3-4).

was premature. Exercising the discretion that Castle acknowledged she possessed, (Doc. 134 at 3-4), the Magistrate Judge denied the motion to stay and granted the motion to compel.

Castle filed a timely objection under Rule 72(a). (Doc. 140). The Court ruled that Castle had failed to meet its burden of demonstrating that the Magistrate Judge's order was clearly erroneous or contrary to law and therefore affirmed her ruling. (Doc. 143). Castle thereafter served responses to the outstanding discovery requests, (Doc. 144), including the five exhibits now at issue.[8]

Approximately one month after this production, the Court granted Castle's motion for JOP. (Doc. 146). The relator then moved for leave to file a third amended complaint, relying on the recently produced documents. (Doc. 156). Castle objected on numerous grounds, including the futility argument that the relator should not be permitted to use discovery from Castle to adequately plead her claims. (Doc. 166 at 10-12; Doc. 174 at 10-12). The Court rejected the argument as based on cases involving defendants that, unlike Castle, timely objected to discovery as premature. (Doc. 175 at 7).

Castle first attempts to revisit the Magistrate Judge's ruling denying its motion to stay discovery. It is too late to do so, and in any event Castle has not shown that the Magistrate Judge erred, especially given the limited and imprecise presentation Castle then made. For both reasons, Castle must live with the consequences of that ruling.

Castle thus seeks to persuade the Court that, even though the relator properly *obtained* discovery, she is forbidden to *use* that discovery to state a claim that survives scrutiny under Rules 12(b)(6) and 9(b). The relator objects that

---

[8] The Magistrate Judge did not rule on the objections timely raised by Castle; instead, she ordered Castle to serve "new and complete responses (which may include valid objections) to all of Carver's discovery requests that are the subject of the motion." (Doc. 139 at 6). It appears that Castle elected to respond without objection. *Compare* Doc. 144 (notice of serving "responses") *with* Doc. 120 (notice of serving "objections"). In any event, Castle served approximately 14,000 pages of documents. (Doc. 158 at 2).

Castle raised a truncated version of this argument in opposition to her motion for leave to file a third amended complaint and that the Court rejected the argument. (Doc. 190 at 10). Because the parties' presentations on this issue (as well as the Court's discussion of it) were so modest, and because the relator cites no authority for the proposition that a ruling rejecting a pre-amendment futility argument is controlling on a post-amendment motion to dismiss, the Court considers Castle's argument.

According to Castle, "[n]umerous Circuits, including the Eleventh Circuit, have held that a relator whose *qui tam* complaint is inadequate cannot amend her complaint to add new allegations based on discovery obtained from the defendant." (Doc. 184 at 9). That is, Castle asserts as established law that a relator cannot use information she obtains in discovery to cure a pleading deficiency. Most of the cases on which Castle relies, however, stand only for the very different proposition that the stringent requirements for satisfying Rule 9(b) will not be watered down in FCA cases, as to do so would enable a relator to learn the essentials of her case – after surviving a Rule 12(b)(6) or 12(c) motion under an insupportably relaxed Rule 9(b) standard – through subsequent discovery. *E.g., United States ex rel. Clausen v. Laboratory Corp. of America, Inc.*, 290 F.3d 1301, 1313 & n.24 (11th Cir. 2002).[9] As noted, the question before the Court is not when

---

[9] Castle's other appellate authorities are to like effect. *See United States ex rel. Joshi v. St. Luke's Hospital, Inc.*, 441 F.3d 552, 559 (8th Cir. 2006); *United States ex rel. Karvelas v. Melrose-Wakefield Hospital*, 360 F.3d 220, 231 (1st Cir. 2004); *United States ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 309 (5th Cir. 1999); *United States ex rel. Godfrey v. KBR, Inc.*, 360 Fed. Appx. 407, 411 (4th Cir. 2010).

Castle suggests without explanation that using discovery received from a defendant that, like Castle, did not properly or timely resist production is "the same thing" as a "relaxed pleading standard." (Doc. 194 at 11). It clearly is not. A relaxed pleading standard means that the relator is permitted to satisfy Rule 9(b) without actually pleading fraud with particularity, while the relator here is attempting to plead fraud with the full particularity required by governing law. In the former situation, the relator inappropriately accesses discovery due to the improper use of an artificially reduced pleading threshold; in the latter, the relator appropriately accesses discovery due to the defendant's cooperation and failure to properly and timely object.

a relator can properly obtain discovery but what use a relator can make of discovery she has properly obtained.[10]

Castle is left with a single case that may plausibly be read as supporting its position that discovery properly obtained by a relator cannot be used to fix a deficient FCA complaint. In *United States ex rel. Keeler v. Eisai, Inc.*, 568 Fed. Appx. 783 (11th Cir. 2014), the panel "affirm[ed] the dismissal of this case for the reasons set forth in the district court's scholarly and thorough" orders. *Id*. at 784. The primary order granted the defendant's motion to dismiss for failure to satisfy Rule 9(b). *Id*. at 784-804. A later, brief order denied the relator's motion to amend the order of dismissal. *Id*. at 804-05. The latter motion sought three forms of relief, including leave to file an amended complaint based on information obtained in discovery. The district court denied leave for multiple reasons before concluding with the observation that, "[i]n any event …, allowing [the relator] to use documents obtained in discovery to overcome pleading hurdles would circumvent the purpose of Rule 9(b)." *Id*. at 804-05.

"Unpublished opinions are not controlling authority and are persuasive only insofar as their legal analysis warrants." *Rogers v. Secretary, Department of Corrections*, 855 F.3d 1274, 1278 n.1 (11th Cir. 2017) (internal quotes omitted). For several reasons, the Court does not find *Keeler* persuasive. First, while the *Keeler* Court clearly agreed with the result reached in the trial court and with its general reasoning, it seems unlikely that the panel approved of every word and concept in the trial court's 21 pages of writing (as would be the case had the panel crafted its own opinion).

---

[10] Nor do these cases effectively address the foreclosed issue of whether the relator properly obtained discovery. They make clear that a relator should not receive discovery as a result of a court's application of an erroneously low pleading standard, but they do not preclude a relator from receiving discovery as a result of a defendant's willing participation in discovery without a timely objection of prematurity.

Second, the trial court gave multiple reasons for denying leave to amend,[11] any of which would have justified denial of leave to amend, before tagging on the "in any event" observation regarding the purpose of rule 9(b). 568 Fed. Appx. at 804-05. It therefore appears that the observation was not the basis – or even an alternative basis – for the denial of leave to amend but is at best dicta.

Third, the only authorities cited to support the observation were *Clausen* and *Karvelas*. 568 Fed. Appx. at 805. As discussed above, these cases do not address the use a relator may make of discovery properly obtained.

Fourth, the only purpose of Rule 9(b) that is clearly supported by the trial court's authorities is one of allowing a defendant who properly and timely invokes it to require a plaintiff to plead fraud with particularity before forcing the defendant to engage in discovery. The protections of Rule 9(b) are not self-triggering, and Castle has not shown that they prevent a plaintiff from using discovery she properly obtained due to the defendant's failure to properly and timely resist production.

Because Castle has failed to demonstrate that the relator is barred from using information she obtained in discovery to cure pleading deficiencies, its motion to dismiss on this ground must fail.

### III. Failure to Plead Fraud with Particularity.

As noted, the Court granted Castle's motion for JOP because the second amended complaint failed to plead, with the particularity required by Rule 9(b) and Eleventh Circuit precedent, that any false claim was *actually submitted* to the government. Castle argues that the additional allegations of the third amended

---

[11] These included: (1) the relator's failure to show that the four previous opportunities he had been afforded to state a claim were inadequate; (2) his failure to attach a proposed fourth amended complaint to his motion; (3) his failure to explain how his new allegations would suffice to satisfy Rule 9(b); and (4) his employment of an inappropriate vehicle for the relief requested. 568 Fed. Appx. at 804.

complaint still fail to do so. (Doc. 184 at 17-23). The Court agrees. The Court's extended discussion of the stringent nature of the pleading standard as construed by the Eleventh Circuit, (Doc. 146 at 4-13), continues to apply with full force, and the relator's additional allegations do not alter the outcome of that analysis.

The only significant additional allegations of the third amended complaint are the following:

- That Pain, Ruan and Couch agreed with Castle to refer all urine drug screens (with an expected minimum monthly quota) to Castle in exchange for Castle's charging the other defendants a fixed fee with respect to patients having private pay insurance; as part of the agreement, Pain, Ruan and Couch would bill the private insurers and retain all revenue from such reimbursements, and Castle would bill Medicare and other government payors with respect to patients covered by those programs and retain all revenue from such reimbursements;
- That Ruan and Castle later agreed to a price reduction for the privately insured patients in exchange for an increase in Medicare referrals;
- That, under the scheme, Pain, Ruan and Couch billed private insurers and Castle billed Medicare and other government agencies.

(Doc. 178 at 23-24, 41, 43).[12]

The relator's second supplemental disclosure statement of material evidence, (Doc. 178-1), is incorporated in the third amended complaint. (Doc. 178 at 2). It adds the following:

- Someone in Pain's billing department told the relator that Pain was no longer billing Medicare;

---

[12] The relator concedes that these are the key new allegations. (Doc. 178 at 1).

- Castle's collector established an office at Pain and eventually took over the urine drug screen process;
- Ruan admitted to the relator that he was receiving a kickback from Castle in exchange for sending the required quota of referrals; and
- Samples sent to an outside lab (Castle) rose immediately thereafter.

(Doc. 178-1 at 3-4).[13]

The new allegations provide further detail about the allegedly fraudulent scheme, but they do not directly address (beyond a conclusory *ipse dixit*) whether any fraudulent claims were actually submitted to the government. The relator provides no explanation how these allegations could, alone or in conjunction with her previous allegations, satisfy Rule 9(b) as to the actual submission of a fraudulent claim. On the contrary, her very brief response to Castle's motion to dismiss for want of particularity focuses entirely on how the "scheme, in detail, is now spelled out" in the current iteration of the complaint. (Doc. 190 at 15).[14] As the Court has pointed out, a relator must allege with particularity two things: the scheme and the submission of a false claim pursuant to that scheme. (Doc. 146 at 4-5). Regardless of whether the relator has met her burden with respect to the former, she still has not done so with respect to the latter, and that failure remains fatal to her claims.[15]

---

[13] The relator suggests that the Court, in evaluating the adequacy of her pleading, look also to the produced documents themselves. (Doc. 190 at 15). Because they are not attached to or incorporated within the third amended complaint, the Court on this Rule 12(b)(6) motion cannot do so.

[14] To the uncertain extent the relator suggests that Castle must have billed Medicare because that was the parties' arrangement, the Court's answer remains that, while such an inference "is not illogical, it falls far short of pleading submission to Medicare with the particularity required by Rule 9(b)." (Doc. 146 at 7).

[15] As on its motion for JOP, Castle asserts additional pleading deficiencies. As on its order granting Castle's motion for JOP, (Doc. 146 at 3), the Court need not address those asserted deficiencies, since the failure to plead with particularity the actual submission of a fraudulent claim is dispositive.

**IV. Dismissal with Prejudice.**

Without discussion, Castle seeks dismissal with prejudice. (Doc. 184 at 1, 20; Doc. 194 at 1, 15). The relator asks that any dismissal be without prejudice, "so as to enable this Court to consider any future request(s) for leave to amend her Complaint by the Relator and/or similar requests by the U.S. Government." (Doc. 190 at 16).

Litigants are not entitled to limitless opportunities to amend their complaints to state a claim on which relief can be granted. Nor are they entitled to limitless time to decide whether to make the attempt. Nevertheless, the Court is cognizant of the difficult task a relator faces in pleading an actionable FCA claim. Because Castle is unable to articulate any reason why dismissal should be with prejudice, the Court will afford the relator a third opportunity to plead her case against Castle; she should not assume she will be provided a fourth.

**CONCLUSION**

For the reasons set forth above, Castle's motion to dismiss is **granted in part**. This action as to Castle is **dismissed**, **without prejudice** to the relator's ability to seek leave, on or before **July 26, 2018**, to file a fourth amended complaint,[16] failing which the relator's action as to Castle will be dismissed with prejudice and without further notice.[17] To the extent Castle seeks additional or other relief, its motion to dismiss is **denied**.

DONE and ORDERED this 26th day of June, 2018.

> s/ WILLIAM H. STEELE
> UNITED STATES DISTRICT JUDGE

---

[16] Any such motion must be accompanied by the proposed pleading. Civil Local Rule 15(b).

[17] Barring timely and effective briefing by Castle, dismissal as to the government will remain without prejudice. *Urquilla-Diaz v. Kaplan University*, 780 F.3d 1039, 1057 (11th Cir. 2015).