**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** *ex rel.*  * | |
| **LORI L. CARVER,** * | |
| * | |
| * | |
| Plaintiff, * | |
| * | |
| AND * | CIVIL ACTION NO: **13-392** |
| * | |
| **PHYSICIANS PAIN SPECIALISTS OF** * | |
| **ALABAMA, P.C., et al.;** * | |
| Defendant. * | |

**RELATOR'S MOTION**
**TO UNSEAL THE COURT FILE**

Relator Lori L. Carver ("Mrs. Carver") respectfully moves the Court to order the unsealing of the court file. In support of its motion, Mrs. Carver states as follows:

1. Pursuant to the False Claims Act, private citizens ("relators") who believe the United States government has been defrauded in connection with certain federal activities or programs may file a complaint *in camera* and under seal. 31 U.S.C. § 3730(b)(2). The complaint must remain under seal for at least 60 days, during which time the government will investigate the case and determine whether to intervene in the action. *Id.* The government may, for good cause, move to extend the time during which the complaint remains under seal. U.S.C. § 3730(b)(3). Such motions may be supported by affidavits or other submissions that are also filed *in camera* and under seal. *Id.* Although the statute clearly contemplates that the complaint be unsealed once the government has made an intervention decision, the False Claims Act is silent with respect to whether other documents filed under seal are to remain under seal indefinitely.

2. Courts that have considered this issue have overwhelmingly held that, by permitting *in camera* submissions, the statute necessarily invests the court with authority either to maintain

the filings under seal or to make them available to the parties. *United States ex rel. Health Outcomes Tech. v. Hallmark Health Sys.*, 349 F. Supp. 2d, 170, 173 (D. Mass. 2004) (citations omitted). These same courts have consistently granted motions to have the seal lifted. *Id.* (ordering the court file unsealed because it contained "no information that could jeopardize the prosecution of this or any related case,") see also *United States ex rel. Erickson v. Univ. of Washington*, 339 F. Supp. 2d,1124, 1126 (W.D. Wa. 2004) (ordering unsealed the entire court file); *United States ex rel. Johnson-Pochardt v. Rapid City Reg'l Hosp.*, 2003 U.S. Dist. LEXIS 4758, *8-9 (D.S.D. Jan. 21, 2003) (ordering all documents unsealed and noting that extending the seal period indefinitely would contradict the legislative intent underlying the False Claims Act; *United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr. Family Orthopedic Assoc., L.L.C.*, 2001 U.S. Dist. LEXIS 2918, *8 (E.D. Mich. Jan. 24, 2001) (unsealing the Government's Applications for Extensions of Seal and Extension of Time for the Government to Elect to Intervene and their supporting materials); *United States ex rel. Coughlin v. Int'l Bus. Mach. Corp.*, 992 F. Supp. 137, 141 (N.D.N.Y. 1998) (ordering unsealed the entire court file); *United States ex rel. Pentagon Tech. Int'l Ltd.*, 885 F. Supp. 80, 83 (S.D.N.Y. 1995) (ordering that the complaint and all other materials in the court's files be unsealed and served upon the defendants); *United States ex rel. Mikes v. Straus*, 846 F. Supp. 21, 23 (S.D.N.Y. 1994) (unsealing the entire court file when the Government declined intervention, noting that only "routine investigative procedures which anyone with rudimentary knowledge of investigative processes would assume would be utilized" would be disclosed, and no ongoing investigation would be jeopardized).

3.     Indeed, the only circumstances in which courts have refused a request to unseal the entire court file involve a finding that the sealed materials would provide substantive details of the government's investigation or disclose the names of parties that were not defendants. *See Health*

*Outcomes Tech.*, 349 F. Supp. 2d at 174 (unsealing everything in the court file, but redacting a transfer order containing the names of the parties that were not defendants); *McLaren Reg. Med. Ctr. Family Orthopedics Assoc., L.L.C.*, 2001 U.S. Dist. LEXIS 2918 at *8-9 (unsealing the entire court file, but redacting certain portions because they "would not be of any value to Defendants"); *McDonnell Douglas Corp.*, 902 F. Supp. at 192. Even those courts, however, have unsealed the remainder of the court file or produced the documents with the third-party names redacted. *Id.*

4.     The Court is familiar with the facts of this case.  Presently, Mrs. Carver is seeking a default judgment, arguing that the government based its criminal case on information she provided them in this civil case.  The government has objected to Mrs. Carver's amended motion for entry of default judgment (Doc. 272).[1]

5.     Relator seeks to further support her motion for default and meet the "same fraud" standard discussed in the 11th Circuit's decision in this case (i.e. show that the defendants were held criminally liable for the same fraud (i.e. health care fraud)):

> A final word. Our ruling will not disable Ms. Carver from getting her relator's share. The government assured us in its brief that a ruling against intervention "will not necessarily prevent a future recovery." It continued: "Where a defendant is found civilly liable for damages in a False Claims Act suit **after being found criminally liable for the same fraud**, the defendant may deduct restitution paid to the United States in the criminal proceedings as a credit against the False Claims Act damages award. In such circumstances, a qualified relator is **entitled to a share of the full amount of the damages *1229 award, including restitution previously paid**."We understand this to mean a relator is entitled to a share of the forfeited property to the extent the <u>qui tam</u> defendant can deduct **any forfeiture** from the <u>qui tam</u> award. It appears the government gave the Ninth Circuit the same assurance in <u>Van Dyck</u>. <u>See</u> 866 F.3d at 1135 n.3. We expect the

---

[1] The government has objected to the Relator's amended motion for default despite an apparent lack of standing.  In its objection, the government cites to the Supreme Court's decision in *Eisenstein* (556 U.S. 928 (2009)) to support its standing.  (Doc 272, PageID.3594).  Eisenstein does not go that far, and in fact limits the United States involvement, in non-intervention cases, to 3 scenarios: "If the United States declines to intervene, the relator retains "the right to conduct the action." <u>§ 3730(c)(3)</u>. The United States is thereafter limited to exercising only specific rights during the proceeding. These rights include requesting service of pleadings and deposition transcripts, <u>§ 3730(c)(3)</u>, seeking to stay discovery that "would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts," <u>§ 3730(c)(4)</u>, and vetoing a relator's decision to voluntarily dismiss the action, <u>§ 3730(b)(1)</u>"

government will honor it.[2]

6.      Here, after Mrs. Carver filed her False Claims Act suit on August 1, 2013, the government requested 6 six-month extensions of time to consider its election to intervene (See Order from Judge Steele dated April 8th, 2016).  Further, in 2016, the government sought a stay of this case "pending a verdict in the parallel criminal case" which was denied by Judge Steele. (See Order from Judge Steele dated April 8th, 2016) Later that same year the government declined intervention, but requested that the memorandums previously filed alongside their motions to extend should remain under seal. (Doc 24.)

7.      Each time such an extension was sought by the government, it was accompanied with a memorandum, and likely supporting documents, meeting a "good cause" standard why such an extension was needed.  The memorandums of law filed by the government explaining the need to extend the time of the seal period may well support Mrs. Carver's attempt to meet the 11th Circuit's "same fraud" standard.

8.      Prior to the filing of this motion, the undersigned requested that the government provide the memorandums informally.  The government has objected to their disclosure, saying the documents are "privileged, not subject to disclosure, and irrelevant to the current ask."[3]

---

[2] See United States v. Couch, 906 F. 3d 1223, 1228 (11th Cir. 2018). The government has informally referred to this language as dicta.  It's not.  The 11th Circuit cites to the government's brief.  Importantly, since the Couch decision, the 3rd circuit has also adopted the "same fraud" standard in U.S. v. Weigler, 941 F. 3d 665 (3rd Cir. 2019) "Charte may nonetheless take solace in the government's representation—to this Court and to our two sister circuits that have confronted this question—that it "allow[s] a qualified relator to a share of the full amount of [a] damages award, including the restitution previously paid." Appellee Br. 29 (citing *United States v. WellCare Health Plans, Inc.*, 2011 WL 4431157, *2 (M.D. Fla. 2011), where "the Government ... escrowed 25% of [a] $40 million restitution, pending a resolution of the [related] qui tam cases for [the] purpose" of allowing the "Movant and the other relators" to "participat[e] in the distribution of restitution paid incident to the criminal prosecution"); *see also Couch*, **906 F.3d at 1228–29**; *Van Dyck*, 866 F.3d at 1135 n.3.

[3] In regard to unsealing documents, the question of whether the documents contain work product has come up before. Courts have consistently held that it is irrelevant to the issue at hand. *See United States ex rel. Health Outcomes Techs. v. Hallmark Health Sys.*, 349 F. Supp. 2d 170, 174 (D. Mass. 2004) ("The government contends that the information contained in the documents which it seeks to keep under seal is protected by the attorney work product doctrine. Because discovery is not at issue here, the work product doctrine is inapplicable."); *United States ex rel. Goodstein v. McLaren Reg'l Med. Ctr.*, No. 97-CV-72992-DT, 2001 U.S. Dist. LEXIS 2918, at *8-9 ( E.D.

9.     The First Amendment and the common law create a presumption that court records should be made public. *See FTC v. Abbvie Prods. LLC,* 713 F.3d 54, 62 (11th Cir. 2013) ("The common law right of access 'establishes a general presumption that criminal and civil actions should be conducted publicly' and 'includes the right to inspect and copy public records and documents.'")(quoting *Chi. Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)); *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007) ("A motion that is 'presented to the court to invoke its powers or affect its decisions' whether or not characterized as dispositive, is subject to the public right of access.").  This right of access exists because court proceedings are matters of "utmost public concern." *Landmark Commc'ns v. Virginia*, 435 U.S. 829, 839 (1978). Courts have reversed the sealing of docket sheets as overbroad and incompatible with the First Amendment's presumptive right of access. *See, e.g.*, *In re State-Record Co.*, 917 F.2d 124, 129 (4th Cir. 1990). The Eleventh Circuit has ruled that this principle applies in criminal cases and the Second and Fourth Circuits have applied it to civil proceedings. *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 96 (2d Cir. 2004); Co. *Doe v. Pub. Citizen*, No. 12-2209, 2014 U.S. App. LEXIS 7113, at *49-50 (4th Cir. Apr. 16, 2014).

10.     The False Claims Act allows for a suspension of the presumption in favor of public access to court records during the initial seal period of a *qui tam* case. 31 U.S.C. § 3730(b)(2),(3). The Senate Judiciary Report clarifies, however, that the purpose of this temporary seal is to allow the Government the opportunity to investigate the relator's allegations and decide whether to intervene in the case. S.ReP.N o.99- 345, 99th Cong., 2d Sess.24, reprinted in 1986 U.S. Code Cong. & Ad. News 5266, 5289. Once the Government has declined intervention, the statutory

---

Mich. Jan. 24, 2001) ("[T]he work product doctrine is inapplicable here, as a discovery request is not at issue. Rather, the Defendants are simply requesting access to materials filed with the Court in a normally public record.").

purpose of sealing the documents expires. *Under Seal v. Under Seal*, 326 F.3d 479, 486 (4th Cir. 2003) ("The purpose of the FCA does not support continued sealing, and only justifies sealing in order that the government may investigate.")[4] Moreover, The public has a special interest in cases where a defendant is accused of defrauding federal health care programs. *United States ex rel. Permison v. Superlative Techs. Inc.,* 492 F.Supp.2d 561,564 (E.D .Va.2007). The presumption in favor of open records should be followed in this case because the public has an interest in the case and the purpose of the seal expired when the Government declined intervention.

11.     Further, this court should lift the seal unless it finds that the Government has made a "compelling showing" that the harm that would occur if the records were made public outweighs the relator's need to examine the sealed documents. *United States ex rel. Lee v. Horizon West*, Inc., 2006 U.S. Dist. LEXIS 97310, 2006 WL 305966; *Littlewood v. King Pharm., Inc*., 806 F. Supp. 2d 833, 843 (D. Md. 2011). The burden is on the party requesting that the records should remain under seal to show a compelling reason to overcome the presumptive right of access. Courts have routinely unsealed these records, even in cases where the government is opposed. *See, e.g*., *United States ex rel. Pacific v. Doctors Care Health Servs., Inc*., No. 05-14017, 2007 WL 1140934, at *2 (S.D. Fla. Apr. 17, 2007); *United States ex rel. Fender v. Tenet Healthcare Corp*., 105 F. Supp. 2d 1228, 1230-31 (N.D. Ala. 2000).   Unsealing the records is appropriate when the documents "merely disclose routine investigative procedures." *Littlewood*, 806 F. Supp. 2d at 843. Courts have found that there can be a compelling reason for the records to remain under seal when the records include confidential investigative techniques that would jeopardize an on-going investigation. *Pacific*, 2007 WL 1140934, at *2. Here, the investigation is over. Further, an *in camera* review of the documents at issue in this case would reveal if the documents include

---

[4] These cases are specifically referencing the unsealing of the relator's complaint; however, the same First Amendment considerations are relevant to the unsealing of the memorandums filed by the government.

confidential investigative techniques worthy of protection from disclosure. If this court finds that the documents contains sensitive information, it can partially lift the seal under a protective order for the benefit of relator.[5]

12.     Any reason the government may have for keeping the records under seal will not overcome relator's need for the information possibly contained in these documents. This court has indicated that a showing of the similarities between the civil and criminal actions is required for the relator to utilize damages awarded in the criminal action (in the form of restitution and forfeiture) to support her civil default judgment. The memorandums filed alongside the government's motions for an extension of time may shed light on that subject.  Documents have been unsealed to allow defendants the opportunity to explore whether the previously sealed documents support any of the defendant's defenses or positions. *See Rostholder*, 799 F. Supp. 2d at 549. For documents to be unsealed, a defendant need only demonstrate the **mere possibility** that the documents may be useful to the defendant. *Id*. This standard should be applied in the current case, where the party seeking the lifting of the seal is the relator. The relator, who is working presumably alongside the government in the execution of a *qui tam* case, should not have to prove more than a *qui tam* defendant for beneficial documents to be unsealed.

13.     For an extension of the seal period to be granted, the government must show the court good cause. 30 U.S.C. § 3730(b)(3). The government made this showing in the sealed memorandums attached to their motions for extensions of time.  The relator believes that the government used the information she provided in her complaint and disclosure statement to guide its investigation and assist in the prosecution of Drs. Ruan and Couch. The memorandums should show what procedures the government was taking, including who they were interviewing and how

---

[5] The court can release the records directly to Relator's attorneys under a protective order limiting the disclosure of the records to only her legal team. Moreover, redaction of any such investigative techniques could also be employed.

they determined that they should instead obtain a criminal indictment against these defendants. This information may further show the overlap between these two cases.

14.     Moreover, in this case the government has advanced a number of arguments as to why the relator may not recover: whether the allegations were publicly disclosed, whether Mrs. Carver is the original source of the information, and whether Mrs. Carver is a qualified relator.[6] Information contained (or not mentioned) in the memorandum to the Court under seal may assist the Relator in responding to the government's numerous arguments that the Relator should not recover in this case.

15.     Lastly, should the court grant the relator's motion for default judgment, it will then determine a relator's share to award. The district court must make this determination "depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 USCS § 3730 (d). The court can look at factors like the degree of the relator's involvement in the case and the relator's personal and professional expense. *See United States ex rel. Pratt v. Alliant Techsystems*, 50 F. Supp. 2d 942, 948 (C.D. Cal. 1999), *United States ex rel. Pedicone v. Mazak Corp.*, 807 F. Supp. 1350, 1353 (S.D. Ohio 1992) *overruled on other grounds by United States ex rel. Smith v. Lampers*, 69 F. App'x 719 (6th Cir. 2003), and *United States ex rel. Macias v. Pac. Health Corp.*, 2019 U.S. Dist. LEXIS 94638, 2019 WL 2396305. The court may rely on the sealed memorandums to determine the relator's contribution to the recovery made by the government.

---

[6] In its Response to Carver's Motion to Intervene in the criminal matter the government argued: "Moreover, there are a myriad of complex factual and legal issues presented in her civil matter that require a determination of whether Carver qualifies as a relator, and if so, on which claims and the appropriate amount of her share. For example, there is a serious question as to whether Carver's claims are barred, in whole or in part, due to the "public disclosure bar" under the FAC. See 31 U.S.C. 3730 (e)(4)(A). These are factual and legal issues, which may require hearings **or additional discovery, and can and should be addressed by the presiding Judge in the qui tam proceeding, at the conclusion of the civil case.**" (Case 1:15-cr-00088-CG-B, Doc. 549, Page ID #: 7777) (emphasis added)

## CONCLUSION

Public policy as set out in the common law and the First Amendment support a presumptive right of access to court records. The government cannot make a compelling showing that any harm that may result from the unsealing of the records would outweigh the benefit conferred on the Relator by access to them – to show that the government obtained a criminal conviction based on the "same fraud" as revealed and alleged in this case.

Accordingly, Mrs. Carver respectfully requests that the Court enter an Order unsealing the entire court file, or in the alternative, partially lift the seal on these documents with a protective order for the benefit of the relator.

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1(a)(3)(A), I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues.

Respectfully Submitted,

/s/ Richard Holston
RICHARD H. HOLSTON, HOLSR5536
rhh@holstonvaughan.com
/s/ Gregory Vaughan
GREGORY VAUGHAN, VAUGG6227
gev@holstonvaughan.com

**OF COUNSEL:**

Holston, Vaughan & Rosenthal, LLC
P.O. Box 195
Mobile, Alabama 36601
(251) 432-8883 – Phone
(251) 432-8884 – Facsimile

/s/ Peter S. Mackey
PETER S. MACKEY, MACKP4325
PSMackey@bcmlawyers.com
WILLIAM M. CUNNINGHAM, JR., CUNNW0164
WMCunningham@bcmlawyers.com
PETER F. BURNS, BURNSP5689
PFBurns@bcmlawyers.com
/s/ Troy T. Schwant
TROY T. SCHWANT
TSchwant@bcmlawyers.com

**OF COUNSEL:**

Burns, Cunningham & Mackey, P.C.
P.O. Box 1583
Mobile, Alabama 36633
(251) 432-0612 – Phone
(251) 432-0625 – Facsimile

## CERTIFICATE OF SERVICE

I do hereby certify that I have on the 12th day of October, 2021, filed the foregoing pleading with the Clerk of the Court and have served the following counsel for the United States of America as follows:

Merrick Garland, Esq.
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

Keith Jones, Esq.
Asst. U.S. Attorney, Civil Division
U.S. Attorney, Southern Dist. Of AL
Riverview Plaza, Suite 600
63 South Royal Street
Mobile, AL 36602
deidre.colson@usdoj.gov

Natalie Waites Priddy, Esq.
Trial Attorney
United States Department of Justice
Civil Division, Fraud Section
600 E Street, N.W.  Bldg. BCN-6932
Washington, DC 20004
Natalie.A.Priddy@usdoj.gov


And I further certify that I have served *pro se* Defendant Castle Medical, LLC with a copy of the above and foregoing by U.S. Mail, postage prepaid as follows:

Scott Damron
5700 Highlands Pkwy. SE
Smyrna, GA 30082

**Defendants Upon Whom Service is not Required under Fed. R. Civ. P. 5(a)(2)**

Physicians Pain Specialists of Alabama, PC

John Patrick Couch

Xiulu Ruan

C & R Pharmacy, LLC

/s/ Greg Vaughan
GREG VAUGHAN